# IN THE COURT OF APPEALS OF IOWA

No. 15-1192
Filed April 27, 2016

**REILLY CONSTRUCTION, CO., INC.,**
        Plaintiff-Appellant,

**vs.**

**BACHELDER, INC.,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Winneshiek County, John J. Bauercamper, Judge.

Reilly Construction Company, Inc. appeals the district court's award of damages in favor of Bachelder, Inc.. **AFFIRMED.**

Douglas A. Boese and John C. Beatty of Dunlap & Seeger, P.A., Rochester, Minnesota, and Richard D. Zahasky of Anderson, Wilmarth, Van Der Maaten, Belay, Fretheim, Gipp & Zahasky, Decorah, for appellant.

Dale L. Putnam and Erik W. Fern of Putnam, Fern & Thompson Law Office, P.L.L.C., Decorah, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Reilly Construction Company, Inc. (Reilly) appeals the district court's award of damages in favor of Bachelder, Inc. (Bachelder). Reilly argues Bachelder failed to prove it was damaged by Reilly's actions. Because the trial court properly determined the amount of damages incurred by Bachelder, we affirm.

The facts leading up to the first appeal are fully set out in *Reilly Construction v. Bachelder, Inc.*, No. 14-0817, 2015 WL 1331634, at *1-3 (Iowa Ct. App. Mar. 25, 2015). To summarize briefly: Bachelder contracted with Reilly to construct a pond on property it owns in Winneshiek County, and, to that end, it paid Reilly $116,962.13 for the work it performed. However, the pond did not hold water. Reilly billed Bachelder an additional $93,600 for the parts and labor it expended in an effort to remedy the defect, but problems persisted. After Bachelder refused to pay the additional expenses, Reilly filed a mechanic's lien and petitioned to foreclose on it. Bachelder counterclaimed for damages based on Reilly's alleged negligence, breach of contract, and failure to perform work in a workman-like fashion. The trial court denied both claims. This court reversed the denial of Bachelder's claim and remanded the case for a determination of Bachelder's damages. *See Reilly Constr.*, 2015 WL 1331634, at *9.

On remand, the district court found, in part:

> Since this suit was filed, the water level in the pond has varied greatly, depending upon the amount of rainfall. Following rainy periods, the pond reaches levels that are aesthetically pleasing. When dry periods occur, the pond nearly dries up. The pond has been useless for recreational purposes for extended time periods. The springs do not significantly assist the pond in

maintaining a useable water level. No outside water source has been added.

Expert testimony presented at trial by both sides established that the site selected for the pond was not appropriate, based upon the geology and soil types in the area, [as well as] the natural water sources available from groundwater drainage in the area and the existing natural springs. Furthermore, the use of agricultural water runoff results in poor water quality for swimming and fish habitat.

Testimony by the expert witness retained by [Reilly] also disclosed that the water level of the pond could be increased and water quality improved if a supplemental water source were made available . . . .

[Bachelder] agrees with the expert testimony presented, which concludes that the pond is not repairable to perform in the manner required by the contract. [Bachelder] is unwilling to take any further action to attempt improvement, including the addition of a supplemental water source. Instead, it seeks monetary damages for breach of contract in an amount that would restore its land to the condition it was in prior to the construction of the pond. In order to accomplish the proposed restoration work, it obtained an estimate from an earth-moving contractor for the cost of removing the dam/berm across the valley. The estimate, which is in the total amount of $98,000.00, also includes grading of the area, reconstruction of the waterway, and installation of a silt fence.

[Bachelder] also seeks recovery of incidental damages of $4028.33 for the purchase of sand, equipment, and grass seed for use at the pond. It further asks for reimbursement of the prior payments to [Reilly] in the amount of $116,962.13.

No evidence was presented regarding the feasibility or cost of adding a supplemental water source, such as a well, to supplement the water level and water quality of the existing pond, to allow it to perform in the manner required by the original contract.

No evidence was presented to show that the work done on this property by [Reilly] has affected the value of the property as a whole, either positively or negatively, or impaired the use and enjoyment of the property. Without a doubt, it is highly probable that the proper construction of a recreational pond would have enhanced the value of the property, both aesthetically and financially. Certainly, the expenditure of the money paid already without any significant benefit in return constitutes a loss.

[Reilly] claims that Bachelder has failed to prove the cost of repair of the pond, which it maintains is the proper measure of damages for breach of contract. It also alleges that an award of the damages requested for removal of the pond structure would constitute economic waste. It further argues that a refund of the money already paid would result in a windfall to [Bachelder]. Finally, [Reilly] points out that there is no assurance or requirement

4

that [Bachelder] would actually use any awarded damages to remove the pond structure and "restore" the area to its former condition.

The district court concluded:

> There is no evidence of the cost of any additional work that could be done that would result in a recreational pond that would provide the type of recreational activities that the court of appeals decision determined to be a requirement of the contract. The plaintiff has also rejected this option.
> There is no evidence of any monetary diminution in the value or profitability of the property. There is evidence that the work already done and the expenditures already made have not enhanced the use and value of the property as contemplated by the contract. These facts were confirmed by the court of appeals in its decision.
> Removal of the pond structure to restore the property as proposed by [Bachelder] involves an expenditure of nearly $100,000.00 with no clear economic benefit to [Bachelder]. This work will not make the property useful for any other purpose and will have no apparent effect on use, value, or profitability of the farm. There is no assurance that the work would be performed and the money spent for that purpose. Therefore, an award of damages based upon that concept of damages would constitute economic waste.

The court determined Bachelder's damages to be the $116,962.13 it paid Reilly to construct the pond plus the $4028.33 it incurred for incidental expenses related to the pond's construction, for a total award of $120,990.46 in damages. Reilly now appeals.

Both parties assert that our standard of review is for corrections of errors at law. Under this standard, the trial court's factual findings have the effect of a special verdict. *See* Iowa R. App. P. 6.907. While the factual findings are binding upon us if supported by substantial evidence, we are not bound by the district court's application of legal principles or conclusions of law. *See Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 763 (Iowa 1999).

"The purpose of a damage suit is compensation; the goal is to place the injured party in as favorable position as though no wrong had occurred." *R.E.T. Corp. v. Frank Paxton Co.,* 329 N.W.2d 416, 421 (Iowa 1983). "Damages in defective construction cases may include diminution in value, cost of construction or completion as required under the contract, or loss of rentals." *Serv. Unlimited, Inc. v. Elder*, 542 N.W.2d 855, 857 (Iowa Ct. App. 1995). Typically, the cost of correcting the defects or completing the omissions is the proper measure of damages in a defective construction case. *Id.* at 858. However, if the cost of repair is grossly disproportionate to the result or the benefit obtained, or would involve unreasonable destruction of the contractor's work, damages may be calculated based on diminution in value. *Id.* A combination of the various damage elements may be employed in certain circumstances in order to render the injured party whole. *See R.E.T. Corp.*, 329 N.W.2d at 421. Finally, "[d]amages are limited to the actual loss." *Id.*

Reilly argues Bachelder failed to produce evidence of the cost of repairing the pond or loss of rentals. It further argues that because the evidence shows there has been no diminution in the value of the property, it would be economic waste to award Bachelder damages for the cost of removing the pond structure from the property. On this basis, Reilly argues the court's award of $120,990.46 in damages to Bachelder is unsupported and in error.

Like the pond it built, Reilly's argument does not hold water. The evidence presented shows the site of the pond is not suitable for a pond structure because the underlying soils in the pond area are permeable and ineffective in holding water. As a result, the pond cannot maintain a permanent pool of water without

the addition of a supplemental water source. The fact that the pond cannot be adequately repaired without economic waste does not relieve Reilly of its duty to compensate Bachelder. Nor does it mean Bachelder was not damaged. Reilly's argument overlooks the $116,962.13 Bachelder expended for the pond's construction, plus the $4028.33 in additional costs. Because the pond does not function, it is of no value. While the land's value was not diminished by the pond's construction, it was also not benefited. In other words, Bachelder's position has not improved in exchange for the $120,990.46 it spent. This cost, for which it received no benefit, is the amount of Bachelder's damages. *See Vorthman v. Keith E. Myers Enters.*, 296 N.W.2d 772, 777 (Iowa 1980) ("The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach."); *Bause v. Anthony Pools, Inc.*, 23 Cal. Rptr. 265, 267 (Cal. Dist. Ct. App. 1962) (holding damages for defectively constructed pool that was not capable of being repaired included the amount the owner paid the contractor, as well as the costs of removing the pool and refilling the hole); *Bowling v. Jones*, 300 S.W.3d 288, 295-96 (Tenn. Ct. App. 2008) (holding an award for monies spent by owner in constructing a house was the proper measure of damages where the house was defectively constructed and of no value).

Bachelder contracted with Reilly to construct a recreational pond. As a result of Reilly's breach, the pond is useless to Bachelder, and it is therefore of no value to Bachelder. Under the circumstances presented, we agree the district court employed the proper measure of damages. In order to place Bachelder in as good a position as if the breach had not occurred, it should be reimbursed the

$116,962.13 it paid Reilly, plus the $4028.33 in additional costs it incurred.

Accordingly, we affirm the district court's judgment.

**AFFIRMED.**